IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2004-cr-40039-JPG |
| | ) |
| JAMES A. TAYLOR, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

This matter comes before the Court on Defendant James Taylor's motion to suppress (Doc. 152), to which the Government responded.  (Doc. 216).  Taylor, charged in this case with conspiring to manufacture, possess with intent to distribute, and distribute 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846, moves to suppress an incriminating statement he made to police at the Franklin County hospital during treatment for injuries he received as the driver of a vehicle involved in a one-car accident.  Principally citing a hospital drug-screen reporting positive results for the presence of amphetamines, benzodiazepine and opiates in his system, Taylor states his essential argument as follows: "Since the defendant had positive drug tests for three separate controlled substances, and since the emergency room record indicates that he was incoherent when he was brought to the hospital, the

1

defendant's statement given to police at this time was involuntary and should be inadmissible in this case."

The Court disagrees, however, for several reasons.  For one thing, Taylor's initial premise is as true as it is irrelevant.  It's "true," given that a hospital lab report indicates the presence of "three separate controlled substances" in his system, as Taylor suggests; but it's "irrelevant" because this evidence such as it is falls well short of demonstrating impairment.  So, too, with Taylor's second premise, which misses the mark because it's his condition at the time the statement was made that's relevant here, not his condition when he first arrived at the hospital or at any other time, for that matter—even assuming he was "incoherent" when he arrived at the hospital.  The controlling legal principle holds that a confession will be deemed involuntary (and therefore inadmissible) only if the Court finds, by a preponderance of the evidence, that the confession was the product of psychological or physical intimidation such that it couldn't have been the product of rational intellect or free will.  *United States v. Montgomery*, 14 F.3d 1189, 1195 (7th Cir. 1994).  Also important for present purposes is the notion that, in the absence of a disputed factual issue, a court is well within its discretion to deny a suppression hearing.  *United States v. Toro*, 359 F.3d 879, 884 (7th Cir. 2004).

That said, let's begin our analysis with the statement itself.  Exhibits attached to the motion to suppress suggest that the interview lasted just over an hour.  After being advised of his *Miranda* rights, Taylor began by telling police

2

that although he didn't remember placing a meth lab in the soon-to-be-wrecked truck prior to the accident, he admittedly saw the lab afterwards and therefore asked two passers-by to hide it from the police for him.  Next, he admitted that the hose and fitting found in the truck were both his, and that he used those items to steal anhydrous ammonia from the Benton and Dale, Illinois, farm supply stores.  He used two seven gallon containers in that process, he continued, which he generally executed on a bi-monthly basis.  Then, stolen anhydrous safely in hand, he'd apparently sold it by the cup to three main clients: Kurtis Mateycak, in exchange for one gram of meth; Blake Sullivan and Miki Jo Lampley, for $10 to $20, plus a gram; and Dustin Forby, for an eight ball (or 3.5 grams, a relatively bad deal for Forby).  Taylor also recalled to police that Mateycak threatened Gary Brown because of Brown's cooperation with the authorities in this case; Taylor even provided the details of how Mateycak planned to "stretch [Brown] out."  Accordingly, based on the detailed nature of Taylor's statement, most folks would probably say that everything he said during the interview must've been said voluntarily—and reasonably so.  For what it's worth, that Taylor arranged for someone to pick him up from the hospital, and that he did so less than two hours after giving the above statement to police that evening, is no less telling than his statement itself; for as things appear, Taylor left the hospital without being discharged and after telling the attending nurse he was going outside for a smoke and that he'd be right back.

3

Those calculated acts certainly aren't consistent with the conduct of someone incapacitated to the extent Taylor posits here.

But what of the lab results indicating the presence of drugs in Taylor's system, which he implicitly argues suggest impairment and therefore that the statement he made to police was involuntary?  The short answer is that the presence of drugs alone suggests no such thing.  One's level of impairment isn't obvious from the mere presence of drugs in one's system, without more.  Indeed, just how is one to translate a "percentage of drugs" into a "level of impairment"?  Second, and equally important, impairment is only relevant to the extent it makes police coercion more effective, as the government correctly notes.  It follows that some level of coercion must necessarily exist in the first instance, although the law sensibly recognizes that a lesser amount of coercion will do when the suspect's impairment is reasonably apparent to the interrogating officers.  *Montgomery*, 14 F.3d at 1195.  But again, nothing of the sort exists here.  For as the Court noted in detail above, Taylor's motion says nothing about his supposed level of impairment, if we're to believe he was impaired at all, and nothing suggests that the interrogating officers' behavior was coercive, even assuming *arguendo* that the lesser standard applicable to those who reasonably appear intoxicated applies in this case.  See *Montgomery*, 14 F.3d at 1195.

For the foregoing reasons, Taylor's motion to suppress (Doc. 152) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: July 13, 2005.**

                                                  /s/ J. Phil Gilbert
                                                  **J. PHIL GILBERT**
                                                  **U.S. District Judge**